HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CERRIDWEN AURANDT, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

RANGE VIEW MANAGEMENT, LLC,  d/b/a LENDIVA, BETTER DEBT SOLUTIONS, LLC, and DOES 1-10,

Defendants.

NO. 3:25-CV-05785-BHS

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF OPT IN & ARBITRATION

NOTE FOR MOTION DATE: 5-12-26

## I.    INTRODUCTION

COMES NOW the Plaintiff, Cerridwen Aurandt, by and through her attorney, Peter Schneider of Northwest Debt Resolution, and respectfully requests this Court grant partial summary judgment finding the Plaintiff did not opt in to receiving telemarketing solicitations from the Defendants and did not agree to arbitrate her claims against the Defendants.

## II.    STATEMENT OF FACTS

1.    On 11/7/2025 the Defendants filed a motion to compel arbitration in this matter, alleging that the Plaintiff had "opted in" to arbitrate her claims against the Defendants by "completing" a "three-step-clickwrap agreement" on the Defendants' website, Lendvia.com, on 1/12/2025. ECR# 16.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

2.      The Defendants' only evidence of this were attached to the Declaration of Chase Web. Plaintiff objected to Exhibits B & C to the Declaration of Chase WebB in its Response brief. ECF# 22 at 2-8. Plaintiff renews those objections to the admissibility of Exhibits B & C in light of the following.

3.      The Plaintiff testified via declaration that she never visited the Lendvia.com website on 1/12/2025, never entered her information on the Lenvia.com website, and never agreed to arbitrate her claims in this matter. The Plaintiff also pointed out various inconsistencies with the Defendants' proof. ECF# 23 ¶¶ 3-9.

4.      Part of the Plaintiff's objection to the Defendants' motion to compel arbitration was that it was supported by lay person testimony on highly technical subjects and no proper foundation was laid for its Exhibits. To prove the Plaintiff did not visit the Lendvia.com website on 1/12/2025, enter her information on the website, or agree to arbitrate her claims, Plaintiff's counsel hired and expert witness to audit the Plaintiff's ***only*** cellular device she utilized on 1/12/2025.

5.      Markel Samuel is a Senior Cybersecurity Analyst with over five years of experience in network forensics, digital evidence analysis, telecommunications systems, and internet infrastructure investigations. *Dec of Samuel ¶2.*

6.      Markel Samuel holds multiple educational and professional credentials, including a ISC2 Certification in Cybersecurity, AWS Certification in Cloud Operations, and a Bachelor of Science in Cybersecurity. *Id ¶3.*

7.      Markel was provided the Plaintiff's phone, a Samsung Galaxy S24 Ultra (SM-S928U) on 2/2/2026, and asked to audit the phone to determine if the Plaintiff visited Lendvia.com at 9:06 am on 1/12/2025. *Id ¶7.*

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

**IP ADDRESS ANALYSIS**

8.     Upon investigating the IP address the Defendants alleged linked the Plaintiff to the alleged, Lenvia.com website interaction, Markel opined, "IP address 172.58.43.132 within the United States and within address space allocated to T-Mobile USA, Inc., but reported city-level geolocation varies across lookups, reflecting that IP-based geolocation is an estimate and is not reliable for pinpointing a mobile user's physical location." *Dec of Samuel* ¶12.

9.     His findings confirmed that IP address was one T-Mobile utilizes to broadcast to T-Mobile subscribers in a geographic location, but the size to which T-mobile broadcast to T-Mobile subscribers and sheer number of T-Mobile users assigned that IP address mean the IP address is "not reliable for pinpointing a mobile user's physical location." *Id* ¶12.

**DEVICE FINGERPRINT ANALYSIS**

10.     Upon analyzing the Plaintiff's cell phone's fingerprinting data for 1/12/2025 at 9:06 am, Markel noted several discrepancies. First, the Plaintiff's cell phone has a fixed resolution of 1440 x 3120 yet, the Defendant's "evidence" (Exhibit B) shows a device with a 720 x 1280 resolution. Markel opined that this mismatch in device resolutions, "is a substantive identification inconsistency and does not corroborate that the alleged visit originated from Plaintiff's device." *Id* ¶15.

**DIGITAL FORENSICS EXAMINATION**

11.     Markel conducted a comprehensive digital forensics examination of the Plaintiff's phone, focusing on activity on the phone on 1/12/2025. "No evidence of any downloads of LendVia or similar loan related applications," were found on her phone. *Id* ¶22.

12.     Markel also noted, "The absence of any digital forensic evidence supporting LendVia's claims is particularly significant given that legitimate use of loan platforms would necessarily leave multiple forms of persistent forensic evidence across applications, email verification logs, and VPN usage records that cannot be easily eliminated." *Id* ¶23.

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

**AUTHENTICATION ANALYSIS OF VIDEO EVIDENCE**

13.    Upon his examination of the alleged "video" the Defendants provided "showing" the Plaintiff's opt in, Markel noted, "The technical metadata and forensic attributes of the file demonstrate critical deficiencies in authentication and attribution," and that video was, "consistent with an exported deliverable rather than a raw, device-native capture." *Dec of Samuel* ¶24.

14.    In plainer language, the file associated with Exhibit C to the Declaration of Chase Webb was produced! It is ***not*** raw captured data.

15.    Markel went onto opine that, "The rendered frame size is 1920×1032, which is not a standard native mobile screen-recording dimension for a Samsung Galaxy S24 Ultra and is consistent with cropping, compositing, or re-rendering." In common parlance, the video was heavily edited.  *Id* ¶ 25.

16.    Markel knew this because, "Embedded XMP metadata identifies Creator Tool: Adobe After Effects 2025 (Macintosh) with an XMP history showing the file was "saved" in After Effects and metadata/create/modify timestamps consistent with save/export activity—i.e., the file bears indicators of post-production processing at some point in its chain." Put simply, whoever produced Exhibit C had digital editing software finger prints all over it. *Id* ¶ 26.

17.    Because of these glaring inconsistencies, Markel confirmed, "The metadata does not include any information about the device or session, such as the device model, operating system version, browser version, URL, or IP address, so we cannot link Exhibit C to the Plaintiff's Samsung S24 Ultra or the claimed lendvia.com session just from the metadata." *Id* ¶ 27.

**ANALYSIS OF LENDVIA'S EVIDENCE COLLECTION METHODOLOGY**

18.    In reviewing LendVia's alleged auditing technology produced by "Verified Consent" Markel found, "platform appears to rely primarily on basic web analytics and screen

recording technology without implementing the multi-layered verification protocols typically required for reliable attribution of online activity to specific individuals." *Dec of Samuel* ¶ 29.

19.    Because, "Industry best practices for website consent verification require multiple independent technical validation methods, including device authentication, geolocation verification, user behavior analysis, and digital identity confirmation" Markel found, "LendVia's methodology lacks the technical rigor necessary for accurate attribution of website activity to specific individuals, particularly given the technical inconsistencies revealed through my analysis" and "The technical deficiencies in LendVia's evidence collection system would make it susceptible to false attributions, data corruption, and attribution errors of the type evident in this case." *Id* ¶¶ 29-32.

**FINAL CONCLUSIONS**

20.    Based on his comprehensive review, Markel came to the conclusion that, "the technical record as presented does not provide a reliable basis to conclude that Plaintiff personally accessed the site or assented to the terms at the alleged time." *Id* ¶ 36.

**DEFENDANTS ADMIT THEY HAVE NO OTHER EVIDENCE**

21.    On 1/15/2026 the Plaintiff propounded her first set of interrogatories and requests for production on the Defendants. Plaintiff's third Request for Production asked that the Defendants, "Produce all evidence that supports your claim that the Plaintiff is required to arbitrate her claims against the Defendant's in this matter." *Dec of Schneider, Exhibit A*.

22.    In response, both Range View Management and Better Debt Solutions admitted that it had no other evidence, other than Exhibits A through C to the Declaration of Chase Web to support their assertions that the Plaintiff agreed to arbitration. *Id*, Exhibit B.

23.    On 4/11/2026 Defendants' counsel confirmed the Defendants had no additional evidence of the Plaintiff opting into receiving telemarketing solicitations from the Defendants and agreeing to arbitrate her claims against the Defendants. *Id*, Exhibit C.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

24.    Both parties receive documents from T-Mobile in response to the subpoena issued by the Defendants and those records establish that the Plaintiff's phone was inactive between 3:02 am and 4:19 pm on January 12, 2025. *Id*, Exhibit D.

### III.    STATEMENT OF ISSUE

1.    THIS COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT FINDING THE PLAINTIFF DID NOT OPT INTO RECEIVING TELEMARKETING SOLICITATIONS FROM THE DEFENDANTS OR AGREE TO ARBITRATE HER CLAIMS AGAINST THE DEFENDANTS BECAUSE THE DEFENDANTS HAVE ADMITTED THEY HAVE NO OTHER EVIDENCE BEYOND THE CLEARLY MANUFACTURED EXHIBITS A THROUGH C TO THE DECLARATION OF CHASE WEB.

### IV.    ARGUMENTS & AUTHORITY

**1. Summary judgment standard.**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

In the context of arbitration, courts must determine whether there is a genuine dispute of material fact regarding the existence or enforceability of an arbitration agreement. If no such dispute exists, the court may compel arbitration as a matter of law. *Hansen v. LMB Mortg. Servs.*, 1 F.4th 667, 670 (2021), *Longnecker v. Am. Express Co., 23 F. Supp*. 3d 1099, 1105 (2014), *Tuong Hoang v. Citibank, N.A*., 702 F. Supp. 3d 864, 868-869 (2023).

When the "making of the arbitration agreement" or the "failure, neglect, or refusal to perform" the agreement is in issue, the FAA requires the court to proceed summarily to trial on that issue. *Hansen v. LMB Mortg. Servs*. at 670.

Courts apply the summary judgment standard to assess whether there is a genuine issue of material fact concerning the formation or validity of the arbitration agreement. If such an issue exists, the court cannot compel arbitration without resolving the factual dispute through trial. *Tuong Hoang v. Citibank, N.A*. at 868.

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

The burden of proving the existence of a valid arbitration agreement rests on the party seeking to compel arbitration. *Id* at 869. *See also Card v. Wells Fargo Bank*, N.A., 611 F. Supp. 3d 1080, 1083 (D. Or. 2020).

**2. The Plaintiff never agreed to arbitration of her claims.**

The Plaintiff did not visit the LendVia website prior to the commencement of this Lawsuit in August of 2025, including January 12, 2025. The Plaintiff never agreed to the terms of use or arbitration agreement & class action waiver, or completed the "three-step-process" articulated by Mr. Webb in his declaration.

In fact, upon review of the Defendants' Exhibits B & C, the Plaintiff found many inconsistencies. These inconsistencies have been confirmed and expanded upon by Markel Samuel. In his declaration, Markel explained why these inconsistencies and lack of industry accepted standards and protocol, lead to the conclusion that Exhibit C was produced and is not raw footage of an opt in by the Plaintiff. Put bluntly, it was made up specifically to try to get the Defendants out of this lawsuit.

**3. Washington substantive law on contracts governs whether the parties agreed to arbitrate this matter.**

In determining whether the parties agreed to arbitrate a particular dispute, courts apply ordinary state law principles of contract formation and interpretation, as long as those principles do not conflict with the FAA. *Powell v. Sphere Drake Ins. P.L.C.*, 97 Wn. App. 890, 894, 988 P.2d 12 (1999) see also *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 994, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995).

Contracts cannot be formed without mutual assent, as mutual assent is a fundamental requirement for contract formation under Washington law. *Keystone Land & Dev. v. Xerox Corp.*, 152 Wn.2d 171, 177-178, 94 P.3d 945 (2004). Mutual assent generally takes the form of



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

an offer and acceptance, and the parties must objectively manifest their agreement to the same terms. Without mutual assent, there is no enforceable contract.

Even in the context of internet commerce, basic principles of contract law remain the same. "Mutual manifestation of assent, whether by written or spoken word or conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014).

Arbitration is strictly "a matter of consent, not coercion," a "first principle that underscores all of our arbitration decisions." *Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 184, 139 S. Ct. 1407, 203 L.Ed.2d 636 (2019) (quoting *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 664, 130 S. Ct. 1758, 176 L.Ed.2d 605 (2010)).

Where a party challenges the very existence of a contract containing an arbitration clause, the court—not an arbitrator—must first resolve the issue of contract formation. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 299-300, 130 S. Ct. 2847, 177 L.Ed.2d 567 (2010).

The Plaintiff's sworn declaration provides a clear and unequivocal denial that she went on the Website and/or agreed to arbitration. There was never an offer (to the Plaintiff), acceptance, or a meeting of minds to arbitrate. The declaration of Markel Samuel confirms this. As does Exhibit D to the declaration of Peter Schneider, which shows the Plaintiff's cell phone was idle between the hours of 3:02 am and 4:19 pm on 1/12/2025. Thus it was not her that interacted with LendVia.com at 9:06 am on 1/12/2025.

**4. <u>The Defendants do not have any other evidence of the Plaintiff opting into arbitration.</u>**

Under Rule 56, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden can be satisfied by pointing out the lack of evidence supporting the nonmoving party's case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 10991 1105-1106 (9th Cir. 2000) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

NW DR

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

The Defendants admit they have no other evidence of the Plaintiff's "opt in" to arbitration other than Exhibits A through C to the declaration of Chase Webb. Both parties received the Plaintiff's cell phone records from T-Mobile and those records show no activity on the Plaintiff's phone between 3:02 am and 4:19 pm on 1/12/2025.

In response to Plaintiff's Request for Production #3, the Defendants admit they have nothing beyond Exhibits A-C to the declaration of Chase Webb. Thus, there simply exists no credible evidence that the Plaintiff opted in to receive telemarketing solicitations from the Defendants or agreed to arbitrate her claims. It's a complete fiction manufactured by the Defendants.

## V.   CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court grant Plaintiff's motion for partial summary judgment and rule that the Plaintiff did not opt in to receive telemarketing solicitations from the Defendants or agree to arbitrate her claims against the Defendants in this matter.

DATED April 14, 2026

NORTHWEST DEBT RESOLUTION, LLC


/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

<u>DECLARATION OF COMPLIANCE</u>

The Plaintiff certifies this Motion contains 2,566 words in compliance with LCR 7(e)(4).

DATED April 14, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

DECLARATION OF SERVICE

I, Peter Schneider, am a resident of the State of Washington, over the age of 18 and competent to make this declaration herein. On the date indicated below, I served the foregoing document to the following recipients in the manner described below:

Kevin Bergstrom
kbergstrom@piercedavis.com

Claude Bosworth
cbosworth@piercedavis.com

☐ USPS first class mail
☒ E-mail
☐ Facsimile
☒ Other – ECF e-service

DATED April 14, 2026.

/s/ Peter Schneider
Peter Schneider

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

NW
DR

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015