HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CERRIDWEN AURANDT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RANGE VIEW MANAGEMENT, LLC,  d/b/a LENDVIA, BETTER DEBT SOLUTIONS, LLC, and DOES 1-10,<br><br>Defendants. | NO. 3:25-cv-05785-BHS<br><br>PLAINTIFF'S RESPONSE TO THE DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION |

## I.    RESPONSE

COMES NOW the Plaintiff, Cerridwen Aurandt, by and through her attorney, and submits the following response to the Defendants' renewed motion to compel arbitration (Dkt. 37).

## II.    CASE REVIEW

This lawsuit was commenced by the Plaintiff on 8/11/25 and removed to this Court on or around 9/4/25. On 11/7/25 the Defendants filed a motion to compel arbitration. Dkt. 15. On 1/8/26 this Court denied the Defendants' motion to compel arbitration without prejudice and permitted the parties to conduct limited discovery on the issue of arbitration until 2/23/26. Dkt. 29.

PLAINTIFF'S RESPONSE - 1



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

This deadline was then extended to 4/9/26. Dkt. 33. On 4/14/26, four days after the close of limited discovery, the Plaintiff filed a motion for partial summary judgment on the issues of the Plaintiff's alleged opting into arbitration and opting in to receive telephone solicitations from the Defendants. Dkt. 34.

On 4/28/26 the Defendants filed a renewed motion to compel arbitration in this matter. Dkt. 38. Aside from some discovery responses from the Plaintiff denying that she opted into arbitration, and an acknowledgement from the Defendants that nothing produced by T-Mobile, in response to the Defendants subpoena, evidences the Plaintiff visiting the Lendvia.com website on 1/12/25 and opting into arbitration, the Defendants' renewed motion to compel arbitration is the same as the one it filed in November of 2025. No other new or additional evidence accompanies it.

In contrast, the Plaintiff hired an expert witness in Markel Samuel who conducted a thorough forensic analysis of the cell phone the Defendants claim the Plaintiff used to opt into arbitration on the Lendvia.com website on 1/12/25. His declaration establishes, without a shadow of a doubt, that the Plaintiff did not visit the Lendvia.com website on 1/12/25 or opt into any kind of binding arbitration agreement on the website. Dkt. 35.

The Plaintiff also retained a level 3 qualified private investigator in the United Kingdom to investigate Verified Consent (verifiedconsent.com). His investigation made several key discoveries, including that there is no evidence of a company called Verified Consent or Verified Consent Ltd registered in the United Kingdom; that Verified Consent does not have a physical office space or a phone number; and that neither of the individuals attributed to Verified Consent by the Defendants have any paper trail tied to the alleged company. See Dkt. 50.

In short, the Defendants' renewed motion to compel arbitration provides no additional or new evidence that the Plaintiff agreed to arbitration beyond the suspect evidence utilized in their first motion to compel. For this reason, it should be denied.

PLAINTIFF'S RESPONSE - 2



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

In her supporting declaration (Dkt. 23), the Plaintiff declares under penalty of perjury that she never visited the Lendvia.com website prior to the commencement of this lawsuit or ever agreed to any terms on the website. She has testified that the address shown in Exhibit C to the declaration of Chase Webb is not a real address, not the Plaintiff's address, and does not match her habit of inputting abbreviations in lower case characters when filling out addresses.

For the sake of brevity, the Plaintiff incorporates her first response to the Defendants' motion to compel arbitration and supporting declarations (Dkt. 22-24), her motion for partial summary judgment, reply brief, and supporting declarations (Dkt. 34-36 & 49-51), and her supplemental declaration into this response.

### III.   ARGUMENTS & AUTHORITY

**1)  The Defendants bear the burden of proof that the Plaintiff agreed to arbitration.**

"The party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  A party seeking to compel another party to arbitrate based on an arbitration clause must prove mutual manifestation of assent. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014). "Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

The Court must give the party denying the existence of an agreement to arbitrate, "the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

In determining whether the parties agreed to arbitrate a particular dispute, courts apply ordinary state law principles of contract formation and interpretation, as long as those principles do not conflict with the FAA. *Powell v. Sphere Drake Ins. P.L.C.*, 97 Wn. App. 890, 894, 988

PLAINTIFF'S RESPONSE - 3



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

P.2d 12 (1999) see also *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 994, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995).

Contracts cannot be formed without mutual assent, as mutual assent is a fundamental requirement for contract formation under Washington law. *Keystone Land & Dev. v. Xerox Corp.*, 152 Wn.2d 171, 177-178, 94 P.3d 945 (2004). Mutual assent generally takes the form of an offer and acceptance, and the parties must objectively manifest their agreement to the same terms. Without mutual assent, there is no enforceable contract.

**2) The Defendants have not established that Exhibit C to the declaration of Chase Webb (Dkt. 16 & 16-3) shows the Plaintiff agreeing to arbitration.**

The Defendants' motion should be denied because the Defendants submit a "video recording" purportedly showing somebody, but not the Plaintiff, entering information onto the Lendvia.com website.

Putting aside the fact that Exhibit C is unauthenticated and inadmissible, the alleged screen capture does not show what the Defendants claims it shows, (i.e. the Plaintiff visiting the Lendvia.com website), entering her personal information, and agreeing to online terms including arbitration.

It is simply an alleged re-creation of interactions with the Lendvia website, by someone or something, made by Verified Consent, a company that doesn't exist on paper, doesn't have a phone number, doesn't have a physical office, and has a non-functioning contact email address.

**3) It's not the Plaintiff's burden to prove how the Defendants got her information.**

The Defendants posit that the Plaintiff is, "implying without evidence that Defendants somehow obtained Plaintiff's personal information." Dkt, 37 at P. 3. This is true, the Plaintiff doesn't know how the Defendants got her information, only the Defendants can answer that question.

Yet the Defendants act as though her very reasonable inability to know where the Defendants got her information somehow evidences she entered the information on the

PLAINTIFF'S RESPONSE - 4



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

Lendvia.com website. This is a complete non-sequitur. Again, the Defendants have the burden of proof in proving the Plaintiff agreed to arbitration, not the Plaintiff.

Later in their motion, the Defendants again protest, "Plaintiff has not even put forward a possible explanation for how her Social Security number could have been obtained without her consent." Dkt. 37 at p. 9.

Again, unless the Plaintiff can magically read minds, she's not going to be able to know how the Defendants or Verified Consent got her information.

**4) Plaintiff's "admission" that she uses an android device isn't evidence she visited the Lendvia.com website.**

The Defendants argue, "Moreover, during the limited discovery period, Plaintiff produced no additional evidence to support her self-serving claim to have never visited the Website. To the contrary, evidence was uncovered that cuts sharply against Plaintiff's story. In particular, Plaintiff admitted that she uses an Android device on the T-Mobile cellular network." Dkt. 37 at p.3.

How does the Defendants guessing that the Plaintiff uses an Android device "cut sharply" that she visited the Lendvia.com website? This is a complete non-sequitur. It's like saying someone likes to drink cola and guessing correctly that it's Coke. It will be either Coke or Pepsi 99% of the time. If you use a cell phone in the United States,  99% of the time it will be either an Android device or an Apple device.

Again, it is the Defendants' burden of proof to prove the Plaintiff agreed to arbitration. Simply establishing that the Plaintiff uses an Android device doesn't prove she agreed to arbitration on the Lendvia.com website on 1/12/25.

**5) The Plaintiff never lied about her IP addresses not matching the one provided by Verified Consent.**

In the Defendants' renewed motion to compel arbitration, they argue that the Plaintiff's testimony (Dkt. 23 at ¶ 8) that the IP addresses of her home Wifi and cellular device are not

PLAINTIFF'S RESPONSE - 5

NW DR

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

172.58.43.132 is somehow "unreliable and inconsistent" because her cellular device utilized a dynamic IP address. Dkt. 37 at p.6.

How does this fact make anything the Plaintiff testified about in her declaration "unreliable and inconsistent." The Plaintiff simply testified about the truth, that in November of 2025, 172.58.43.132 was not an IP address associated with either her cellular device or her home WiFi.

Later in her discovery responses the Plaintiff was truthful when she answered that she did not know what her IP addresses were in December of 2024 and January of 2025 because she didn't check them during those times.  Is the Plaintiff supposed to travel back in time to 1/12/25 and look it up? Are the Defendants going to provide the time machine for her to do that?

Yet again, the Defendants mischaracterize the burden of proof as being on the Plaintiff to disprove the data provided by Verified Consent, a company that doesn't exist on paper, doesn't have a phone number, doesn't have a physical office, and has a non-functioning contact email address.

6) **The Defendants' own motion admits that  the IP address listed on Exhibit B to the Declaration of Chase Webb (Dkt. 16 & 16.2), 172.58.43.132, may be tied to multiple subscribers.**

In their renewed motion to compel arbitration, the Defendants admit that the IP address listed in Exhibit B to the declaration of Chase Webb may be associated with more than one subscriber (cell phone users) during the relevant date range. Dkt. 37 at p.7.

How then can they also argue that it is a unique identifier of only the Plaintiff's cell phone? The Defendant is seemingly poking holes in their own arguments. Wouldn't the fact that T-Mobile told the Defendants the IP address may be tied to multiple subscribers mean anyone of those subscribers could have potentially interacted with the Lendvia.com website on 1/12/25? This notwithstanding the fact that the Defendants, who have the burden of proof, still haven't

PLAINTIFF'S RESPONSE - 6

NW
DR

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

established that the 172.58.43.132 IP address was even associated with *any* T-Mobile subscribers on 1/12/25. Nothing they received from the T-Mobile subpoena indicates this.

This is a prime example of the Defendants' spin in this matter. The Defendants didn't realize that T-Mobile cellular data IP addresses are dynamic until they got a response to their subpoena from T-Mobile. This was a disaster, because it completely undercut their main argument, that the 172.58.43.132 IP address was unique to the Plaintiff.

So, what did the Defendants do? Spin it to argue that the Plaintiff was "undermining her credibility" by truthfully testifying that her cellular and home WiFi IP addresses were not 172.58.43.132 in November of 2025.

**7) The Plaintiff is not required to produce documents of her internet browsing history to prove she didn't visit the Lendvia.com website on 1/12/25.**

In their renewed motion to compel arbitration, the Defendants contend, "Moreover, Plaintiff admitted in her discovery responses that she does not possess any documents showing her internet browsing history from January 12, 2025, id. at 6:5-8, meaning that she is unable to corroborate her story that she did not visit the Website on that date." Dkt. 37 at p.9.

Again, it's not the Plaintiff's burden to prove that she didn't visit that website, it's the Defendants and they can't do so, other than with two exhibits *produced*, in the truest sense of the word, by Verified Consent, which is a company that doesn't exist on paper, doesn't have a phone number, doesn't have a physical office, and has a non-functioning contact email address.

The Defendants even admit, in the next section of their motion, that they subpoenaed the Plaintiff's cellular data records and, "no data session records were available, as those records are typically purged by T-Mobile after 90 days" Dkt. 37 at p.9. So, the Defendants admit even they couldn't get those "internet browsing records" if they wanted to.

The Plaintiff has previously testified that she never went on the Lendvia.com website prior to the commencement of this lawsuit. Dkt. 23 at ¶5. The Defendants' argument that her testimony is somehow diminished because she doesn't have her "internet browsing records" is

NW DR

NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

like saying someone can't describe their wedding because they don't have a copy of their marriage certificate with them to "corroborate" their recollection of their wedding.

This, like the IP address fiasco, is another example of spin by the Defendants. When T-Mobile responded to the Defendants' subpoena and informed them that it doesn't keep cellular data usage information for more than 90 days (thus no cellular data would be available from 1/12/25), they decided to spin it in their renewed motion to compel arbitration that the Plaintiff's testimony that she didn't visit the Lendvia.com website prior to the commencement of this lawsuit was somehow diminished without those records, knowing those records no longer exist.

**8) The Defendants' motion to strike the Declaration of Markel Samuel.**

The Plaintiff renews and incorporates her response to this motion to strike from her partial summary judgment reply brief. Dkt. 49 pp..9-13.

### III.    CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court deny the Defendants' renewed motion to compel arbitration. As the Plaintiff has established in her motion for partial summary judgment, reply brief, and this response brief, the Defendants utilization of suspect evidence from Verified Consent fails to even establish a prima facie case for the Plaintiff agreeing to arbitration. Thus the burden to rebut such an assertion never even shifted to the Plaintiff.

In spite of this, the Plaintiff, through the expert testimony of Markel Samuel and Andrew Cooper (Dkt. 35 & 50) has conclusively established that the Plaintiff never visited the Lendvia.com website on 1/12/25, never agreed to arbitration, and that any evidence to the contrary (i.e. from Verified Consent) is highly, highly suspect.

PLAINTIFF'S RESPONSE - 8



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

DATED May 19, 2026

NORTHWEST DEBT RESOLUTION, LLC


/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015
Peter@nwdebtresolution.com

PLAINTIFF'S RESPONSE -  9

### <u>DECLARATION OF COMPLIANCE</u>

The Plaintiff certifies this Reply contains 2562 words in compliance with LCR 7(e)(4).

DATED May 19, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider
Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015
Peter@nwdebtresolution.com

PLAINTIFF'S RESPONSE - 10

### DECLARATION OF SERVICE

I, Peter Schneider, am a resident of the State of Washington, over the age of 18 and competent to make this declaration herein. On the date indicated below, I served the foregoing document to the following recipients in the manner described below:

Kevin Bergstrom
kbergstrom@piercedavis.com

Claude Bosworth
cbosworth@piercedavis.com

Ethan Hazel
ehazel@piercedavis.com
VIA EMAIL ONLY

| | |
|---|---|
| ☐ | USPS first class mail |
| ☒ | E-mail |
| ☐ | Facsimile |
| ☒ | Other – ECF e-service |

DATED May 19, 2026.

/s/ Peter Schneider
Peter Schneider

PLAINTIFF'S RESPONSE - 11



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015